# United States Court of Appeals for the Federal Circuit

---

**ANDREW U.D. STRAW,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2021-1596

---

Appeal from the United States Court of Federal Claims in No. 1:20-cv-01132-DAT, Judge David A. Tapp.

---

Decided: July 14, 2021

---

ANDREW U.D. STRAW, Washington, DC, pro se.

ANDREW JAMES HUNTER, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant-appellee. Also represented by BRIAN M. BOYNTON, TARA K. HOGAN, ROBERT EDWARD KIRSCHMAN, JR.

---

Before LOURIE, BRYSON, and CHEN, *Circuit Judges*.

PER CURIAM.

Andrew U.D. Straw appeals from a judgment of the United States Court of Federal Claims ("the Claims Court") dismissing his complaint for lack of jurisdiction. We affirm.

I

Mr. Straw has filed several actions focused on his claim that he was injured as an infant by contaminated water at Camp Lejeune in North Carolina, and that his injury resulted in a mental disability. In this case, he seeks $6,000,000 in compensatory damages for what he regards as a taking of property without just compensation, in violation of the Takings Clause of the Fifth Amendment.

Mr. Straw's Takings Clause theory stems from an action he brought under the Federal Tort Claims Act ("FTCA") seeking recovery for the alleged injury he and his family members suffered because of the contaminated water. That action was combined with other similar cases in a Multidistrict Litigation proceeding in the United States District Court for the Northern District of Georgia. The district court in the Multidistrict Litigation proceeding ruled that Mr. Straw's claims under the FTCA were barred by North Carolina's ten-year statute of repose. *In re Camp Lejeune N.C. Water Contamination Litig.*, 263 F. Supp. 3d 1318, 1327–28 (N.D. Ga. 2016). The Eleventh Circuit affirmed the dismissal of Mr. Straw's action, 774 F. App'x 564 (11th Cir. 2019), and the Supreme Court denied certiorari, 140 S. Ct. 2825 (2020).

Mr. Straw then brought this action in the Claims Court, arguing that the rulings of the Georgia district court dismissing his FTCA claims effected a judicial taking of his tort claims and the damages he sought in that action. *Straw v. United States*, No. 20-1132, at 1 (Fed. Cl. Jan. 12, 2021). The Claims Court rejected his takings claim and dismissed his complaint for want of subject matter jurisdiction. *Id.* at 1–3. The court explained that by claiming that the Georgia district court and the Eleventh Circuit had

caused a taking of his personal-injury cause of action, Mr. Straw was in effect asking for the Claims Court to overturn the decisions of those courts that his FTCA claim was time-barred. *Id.* The Claims Court refused to do so, holding that it lacked jurisdiction to review the decision of a United States district court. *Id.*

Relatedly, the court held that Mr. Straw's claim sounded in tort. *Id.* at 2. That was because his takings claim depends on a theory that he is entitled to compensation for personal bodily harm, a paradigmatic tort claim. *Id.* And tort claims, the court noted, are expressly excluded from the jurisdiction of the Claims Court under the Tucker Act, 28 U.S.C. § 1491.

Mr. Straw appeals to this court.

## II

This appeal is frivolous. The Claims Court correctly explained that Mr. Straw's Takings Clause theory is meritless because it constitutes a collateral attack on the final judgment of a federal district court in a tort case, which the Claims Court lacks jurisdiction to entertain. Nonetheless, Mr. Straw has raised the same issues before us, while adding unwarranted personal attacks on the trial judge.[1]

---

[1]    In addition to the case before the district court in the Northern District of Georgia, Mr. Straw in 2017 filed an action in the Claims Court almost identical to this one. That action resulted in a dismissal by the Claims Court and an affirmance by this court. *See Straw v. United States*, No. 17-560C, 2017 WL 6492003 (Fed. Cl. May 24, 2017), *aff'd*, 710 F. App'x 881 (Fed. Cir. 2017). Mr. Straw then asserted a claim for compensation from the Department of Veterans Affairs, which the Department denied, followed by a denial of relief by the United States Court of Veterans Claims, 32 Vet. App. 374 (2020), whose judgment

As the trial court noted, the Claims Court does not have jurisdiction to review the decisions of federal district courts. *Petro-Hunt, L.L.C. v. United States*, 862 F.3d 1370, 1384–85 (Fed. Cir. 2017); *Shinnecock Indian Nation v. United States*, 782 F.3d 1345, 1352 (Fed. Cir. 2015); *Joshua v. United States*, 17 F.3d 378, 380 (Fed. Cir. 1994).[2] Because Mr. Straw's takings claim depends on him challenging the Georgia district court's decision—which is final and preclusive—the Claims Court correctly held that it cannot grant the relief he seeks.

---

was affirmed by this court, *Straw v. Wilkie*, 843 F. App'x 263 (Fed. Cir. 2021). In addition, Mr. Straw filed five other actions in the Claims Court between 2017 and early 2021: *Straw v. United States*, No. 17-1082; *Straw v. United States*, No. 20-1145; *Straw v. United States*, No. 20-1154; *Straw v. United States*, No. 20-1157; and *Straw v. United States*, No. 21-745. Besides the appeal in this case, he currently has four other appeals pending before this court: *Straw v. United States*, No. 21-1597; *Straw v. United States*, No. 21-1598; *Straw v. United States*, No. 21-1600; and *Straw v. United States*, No. 21-1602. As of 2017, the Claims Court noted that since 2014 Mr. Straw had filed at least 21 complaints and 12 appeals on his own behalf in various federal courts. *See Straw v. United States*, No. 17-1082C, 2017 WL 6045984, at *5 (Fed. Cl. Dec. 6, 2017). Since then, Mr. Straw has filed a number of additional actions and appeals in various courts with himself as plaintiff or appellant.

[2] Mr. Straw objects to the Claims Court's reliance on *Joshua* on the ground that the plaintiff in that case was incarcerated and was seeking an unrealistic amount of monetary damages. Those facts have no effect on our holding in *Joshua*, which was that the Claims Court does not have jurisdiction to review the decisions of United States district courts.

The Claims Court was also correct in holding that Mr. Straw's claim is in essence a tort claim, which is outside the jurisdiction of the Claims Court under the Tucker Act, *Hercules Inc. v. United States*, 516 U.S. 417, 423 (1996). *See Straw*, No. 20-1132, at 2 (citing and relying on *Straw Estate of Stevens v. United States*, 710 F. App'x 881, 883 (Fed. Cir. 2017)).

Mr. Straw complains that the Georgia district court effectively deprived him of "the law of the place where the damage happened." Appellant's Opening Br. 2. That is not true. The Georgia district court applied the North Carolina statute of repose, and Mr. Straw does not contend that any other law was applicable in that case. His actual complaint is that the case was improperly transferred to the Northern District of Georgia as part of the Multidistrict Litigation proceeding and that the Georgia district court construed the North Carolina limitations statute in a manner contrary to the way it has been construed by the Fourth Circuit. But those were issues for the Georgia district court and the Eleventh Circuit to resolve. They are not issues that either the Claims Court or this court has jurisdiction to address, particularly now that the decisions of the Georgia district court and the Eleventh Circuit have become final.

Mr. Straw contends that a claim of a taking of property without just compensation is cognizable even if the alleged taking is effected by judicial branch officers. The extent to which the Takings Clause of the Fifth Amendment applies to the actions of courts has been the subject of debate. *Compare Stop the Beach Renourishment, Inc. v. Fla. Dep't of Env't Prot.*, 560 U.S. 702, 713–15 (opinion of Scalia, J.), *with id.* at 733–42 (opinion of Kennedy, J.). But even accepting that the prohibition against taking property without just compensation applies to courts in the same manner that it does to other governmental entities, there is no force to Mr. Straw's argument that a party can characterize an adverse judicial decision in a tort case as a taking of a

"chose in action" and seek "compensation" for that taking through an action in the Court of Federal Claims.[3]

At bottom, Mr. Straw's takings theory is based on the assertion that when a court errs in denying a plaintiff relief in a tort case, it effectively "takes" his cause of action and his entitlement to relief. Under that logic, all cases sounding in tort in which a plaintiff is denied relief could be re-cast as Takings Clause claims and re-presented to the Claims Court, notwithstanding the prohibition in the Tucker Act against the Claims Court exercising jurisdiction over tort claims. Not surprisingly, Mr. Straw cites no authority in support of that theory of recovery.

Neither *Chicago, Burlington & Quincy R.R. Co. v. City of Chicago*, 166 U.S. 226 (1897), nor *Logan v. Zimmerman Brush Co.*, 455 U.S. 422 (1982), cited by Mr. Straw, provide support for his claim. The *Chicago, Burlington & Quincy* case established that a state's taking of property without just compensation constitutes a denial of due process under the Fourteenth Amendment. 166 U.S. at 233–39. The Court went on to hold that the prohibition against uncompensated takings applies to a state's courts as well as its legislative and executive branches, but that case concerned a traditional eminent domain proceeding. *Id.* at 233–41.

---

[3]    Justice Scalia's plurality opinion in *Stop the Beach* does not support Mr. Straw's theory. That opinion concluded that "the Takings Clause bars the State from taking private property without paying for it, no matter which branch is the instrument of the taking." 560 U.S. at 715. But nothing in Justice Scalia's opinion supports the proposition that a court "takes" a party's cause of action for personal injury when it denies the claim on the merits. *See In re Lazy Days' RV Ctr. Inc.*, 724 F.3d 418, 425 (3d Cir. 2013) (The court "adjudicated the parties' bona fide dispute regarding their rights . . . . This sort of adjudication of disputed and competing claims cannot be a taking.").

The *Logan* case held that a procedural error by a state agency that extinguished a claimant's cause of action constituted a violation of due process. 455 U.S. at 433–37. Neither of those cases nor *Smith v. United States*, 709 F.3d 1114 (Fed. Cir. 2013), also cited by Mr. Straw, support his contention that an erroneous decision by a federal district court in a tort case constitutes a taking of property without just compensation for which a remedy lies in the Court of Federal Claims.

Contrary to Mr. Straw's contention, a court does not "take" a party's chose in action by ruling against that party on the merits. Takings claims based on that theory have been repeatedly rejected by this court. *See Campbell v. United States*, 932 F.3d 1331, 1340 (Fed. Cir. 2019) ("It is well established that the Claims Court 'cannot entertain a taking[s] claim that requires the court to scrutinize the actions of another tribunal.'" (citation omitted)); *Petro-Hunt*, 862 F.3d at 1385 ("[T]he Court of Federal Claims correctly dismissed Petro-Hunt's judicial takings claim because it could not determine if Petro-Hunt's mineral servitudes were 'previously imprescriptible' or 'transformed' from private to public property without determining whether the Fifth Circuit's interpretation of precedent was correct."); *Shinnecock Indian Nation*, 782 F.3d at 1352 ("Adjudication of the Nation's proposed judicial takings claim would require the Court of Federal Claims to scrutinize the merits of the district court's judgment, a task it is without authority to undertake."); *Vereda, Ltda. v. United States*, 271 F.3d 1367, 1375 (Fed. Cir. 2001) ("[T]he Court of Federal Claims cannot entertain a taking claim that requires the court to 'scrutinize the actions of' another tribunal." (citation omitted)); *Allustiarte v. United States*, 256 F.3d 1349, 1352 (Fed. Cir. 2001) ("To permit collateral attacks on bankruptcy court judgments would 'seriously undercut[] the orderly process of the law. . . . The proper forum for appellants' challenges to the bankruptcy trustees' actions

therefore lies in the Ninth Circuit, not the Court of Federal Claims." (citation omitted)).

In addition to his legal claims, Mr. Straw asserts that the trial judge was biased against him based on the identity of the President who appointed the judge and on a statement in the judge's opinion referring to Mr. Straw's effort to recast his tort claim as "sly." Appellant's Opening Br. 2–3. Neither of those complaints has any merit. There is no support whatsoever for the contention that a judge can be disqualified based simply on the identity of the President who appointed him. *See MacDraw, Inc. v. CIT Grp. Equip. Fin., Inc.*, 138 F.3d 33, 38 (2d Cir. 1998) (appointment by a particular administration is not a ground for questioning a judge's impartiality); *McKee v. U.S. Dep't of Just.*, 253 F. Supp. 3d 78, 81 (D.D.C. 2017) ("[T]he identity of the President who appointed the judge assigned to a case has no bearing on recusal."); *Armenian Assembly of Am., Inc. v. Cafesjian*, 783 F. Supp. 2d 78, 93 (D.D.C. 2011) ("The case law is clear that recusal is not warranted where a judge is alleged to be biased based solely on political connections to the President who appointed her."). And the use of the term "sly" is not "insulting," contrary to Mr. Straw's suggestion; it merely calls attention to the fact that Mr. Straw has sought to recast a tort claim as something that it manifestly is not—a case arising under the Takings Clause. The term "sly" strikes us as a rather mild way to characterize that effort at legal legerdemain.

Mr. Straw also alludes to the "Anti-Filing" order entered against him by the Claims Court. Appellant's Opening Br. 3. He appears to invoke that order in support of his claim that the trial judge was biased against him. Because Mr. Straw was permitted to file the present action, the anti-filing order had no effect on him with regard to this case, and we therefore will not address the merits of that order in this appeal. To the extent Mr. Straw points to the order as evidence of bias on the part of the trial judge, we do not regard the order as indicating any such bias,

particularly in light of the large number of meritless filings by Mr. Straw in the Claims Court and other courts during the past several years.

**AFFIRMED**