NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**ANDREW U.D. STRAW**

*Plaintiff-Appellant*

**v.**

**UNITED STATES,**

*Defendant-Appellee*

---

2021-1600

---

Appeal from the United States Court of Federal Claims in No. 1:20-cv-01157-DAT, Judge David A. Tapp.

-------------------------------------------------

**ANDREW U.D. STRAW,**

*Plaintiff-Appellant*

**v.**

**UNITED STATES,**

*Defendant-Appellee*

---

2021-1602

---

Appeal from the United States Court of Federal Claims in No. 1:21-cv-00745-DAT, Judge David A. Tapp.

_____

Decided:  August 6, 2021

_____

ANDREW U.D. STRAW, Washington, DC, pro se.

ANDREW JAMES HUNTER, Commercial Litigation Branch, Civil Division, United States Department of Justice, for defendant-appellee.  Also represented by BRIAN M. BOYNTON, TARA K. HOGAN, ROBERT EDWARD KIRSCHMAN, JR.

_____

Before PROST, O'MALLEY, and STOLL, *Circuit Judges.*

PER CURIAM

Andrew U.D. Straw appeals from two decisions of the United States Court of Federal Claims ("Claims Court").  In appeal number 21-1600, he appeals from a decision of the Claims Court dismissing his alleged takings claims for lack of subject matter jurisdiction.  *See Straw v. United States*, Dkt. No. 21, No. 20-cv-1157 (Fed. Cl. Jan. 12, 2021).  In appeal number 21-1602, he appeals the Claims Court's denial of his motion to proceed *in forma pauperis* in a separate action.  *See Straw v. United States*, Dkt. No. 9, No. 21-cv-745 (Fed. Cl. Jan. 22, 2021).  Additionally, in both of these appeals, Mr. Straw requests that this court rescind the Anti-Filing Order which the Claims Court imposed in case number 20-1157 and remove the Claims Court judge.  As the issues raised in these appeals overlap, we address them in this consolidated opinion.  *See Straw v. United States*, Dkt. No. 22, No. 20-cv-1157 (Fed. Cl. Jan. 12, 2021).  We *affirm* as to both decisions.

## I.    MR. STRAW'S ABRIDGED LITIGATION HISTORY

Mr. Straw has an extensive litigation history, including several appeals before this court. We briefly summarize some relevant portions of that history here.

In 2017, the Claims Court dismissed Mr. Straw's complaint alleging a Fifth Amendment taking premised on his alleged indirect exposure to toxic chemicals carried home on his father's clothing from his father's job repairing helicopters at the Naval Air Station in Jacksonville, Florida. *Straw v. United States*, 710 F. App'x 881, 882 (Fed. Cir. 2017). The Claims Court found that Mr. Straw's complaint sounded in tort, which is specifically excluded from the Claims Court's jurisdiction. *Id.* This court affirmed. *Id.*

Another of Mr. Straw's complaints, this time to the United States Court of Appeals for Veterans Claims, alleged that he was entitled to compensation under the Honoring America's Veterans and Caring for Camp Lejeune Families Act, 38 U.S.C. § 1787, for injuries allegedly caused by contaminated water at Camp Lejeune. *Straw v. Wilkie*, 843 F. App'x 263, 264 (Fed. Cir. 2021). Mr. Straw alleged that he qualified for benefits because he and his mother regularly visited Camp Lejeune and he was present at Camp Lejeune for at least thirty days while in utero and after his birth. *Id.* He also asserted a Fifth Amendment equal protection claim. *Id.* at 265. This court affirmed the Veterans Court's decision that Mr. Straw was not entitled to benefits because he and his mother lived in an off-base residence and thus did not meet the Act's requirement that beneficiaries or their parents have resided at Camp Lejeune for at least thirty days. *Id.* at 266–67. This court also rejected Mr. Straw's Fifth Amendment equal protection claim, finding that Mr. Straw had not established a lack of rational basis for the statutory residence classification. *Id.* at 267.

Another of Mr. Straw's complaints to the Claims Court sought $6,000,000 for an alleged taking committed by a

district court when it dismissed his tort claim premised on his alleged exposure to contaminated water at Camp Lejeune. *Straw v. United States*, No. 2021-1596, 2021 WL 2944400, at \*1 (Fed. Cir. July 14, 2021). The Claims Court dismissed his complaint for lack of subject matter jurisdiction as it lacks jurisdiction to review decisions of district courts. *Id.* This court found Mr. Straw's appeal of that decision to be frivolous. *Id.* at \*2. We affirmed the Claims Court's lack of jurisdiction to review district court determinations and confirmed that lost tort cases cannot be recast as takings claims in the Claims Court. *Id.* at \*2–3. We also noted that Mr. Straw levied unwarranted personal attacks against the Claims Court judge and denied his request to remove that judge. *Id.* at \*3. Finally, we refused to adjudicate an Anti-Filing Order which the Claims Court entered in case number 20-1157,[1] as that Order did not prevent Mr. Straw's filing of the case at issue there. *Id.* at \*4.

In addition to the two instant appeals, Mr. Straw has two more appeals on this court's docket, appeal numbers 21-1597 and 21-1598. And he has filed numerous cases before other federal courts. Indeed, between 2017 and 2021, he has filed at least forty cases in various federal courts. 21-1602 App. 1.[2]

## II.   APPEAL NUMBER 21-1600

### A.  Background

In appeal number 21-1600, Mr. Straw appeals a decision of the Claims Court dismissing his complaint for lack of subject matter jurisdiction. *See Straw v. United States*,

---

[1]   The Anti-Filing Order is also at issue in the instant appeals.

[2]   All Appendix citations are to the appendices attached to the Government's briefs in the instant appeals, which are identified by their appeal numbers.

No. 20-1157 (Fed. Cl. Jan. 12, 2021). In his complaint, Mr. Straw lists four alleged takings: one from the Second Circuit's dismissal of two of his appeals, one from the Fourth Circuit's dismissal of four of his appeals, one by the Clerk of the U.S. Supreme Court, and one from the Small Business Administration's ("SBA") denial of his Paycheck Protection Program ("PPP") loan application. He places the total value of these four alleged takings at $22,461,078,250.

Mr. Straw alleges that a first taking occurred when the Clerk of the U.S. Court of Appeals for the Second Circuit dismissed two of his appeals for failure to include a coversheet. He alleges that he did include the coversheet. He values this alleged taking at $20,000,000.

Mr. Straw alleges that a second taking occurred when the Clerk of the U.S. Court of Appeals for the Fourth Circuit assigned the same three-judge panel to hear all four of his appeals. He alleges that the clerk "packed [his] appeals with hostile judges" and violated Fourth Circuit policy. 21-1600 App. 16. He further states that he believes the Indiana Supreme Court and other Midwest courts were involved in the conspiracy. He values this alleged taking at $22,291,052,000.

Mr. Straw alleges that a third taking occurred when the Clerk of the U.S. Supreme Court, Scott Harris, allegedly "refused to file [Mr. Straw's] document against the Indiana Supreme Court" after the denial of his petition for a writ of certiorari and thus "denied the services of the U.S. Supreme Court." 21-1600 App. 17-18. He values this alleged taking at $150,000,000.

Finally, Mr. Straw alleges that a fourth taking occurred when the SBA denied his request for a PPP loan in 2020 in the amount of $26,250. He alleges that the SBA denied his loan application on the basis of his failure to complete and return required documents, all of which he

alleges he submitted.  He values this alleged taking at $26,250.

The Claims Court dismissed Mr. Straw's claims, holding that he had failed to concede the validity of the various alleged government actions as required to invoke the jurisdiction of the Claims Court over a takings claim.  The same day that it dismissed his case, the Claims Court entered an Anti-Filing Order based on its finding that Mr. Straw's complaint showed indicia of frivolousness and harassment and based on Mr. Straw's history of raising similar frivolous claims in the Claims Court and other federal courts.

Mr. Straw appealed the Claims Court's dismissal of his case for lack of subject matter jurisdiction and the Claims Court's imposition of an Anti-Filing Order to this court.  We have jurisdiction to review final decisions from the Claims Court under 28 U.S.C. § 1295(a)(3).

## B.  Discussion

On appeal, Mr. Straw appears to request that this court reverse the Claims Court's dismissal for lack of subject matter jurisdiction, rescind the Anti-Filing Order, and remove the Claims Court judge.  He raises the same complaints regarding the Anti-Filing Order and the alleged bias of the judge in both appeals addressed by this consolidated opinion, so we address them only once in our discussion of his second appeal, 21-1602, below.  We first address the Claims Court' dismissal of case number 20-1157, which we hold was not in error.

This court reviews Claims Court decisions to dismiss for lack of jurisdiction *de novo.  Campbell v. United States*, 932 F.3d 1331, 1336 (Fed. Cir. 2019).

Subject matter jurisdiction is a threshold issue that courts must consider before they consider the merits of a claim. *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 94–95 (1998).  The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the

evidence. *Freeman v. United States*, 875 F.3d 623, 628 (Fed. Cir. 2017). In considering a motion to dismiss for lack of subject matter jurisdiction, the court accepts as true the complaint's undisputed factual allegations and construes the facts in the light most favorable to the plaintiff. *Stephens v. United States*, 884 F.3d 1151, 1155 (Fed. Cir. 2018). *Pro se* plaintiffs, such as Mr. Straw, have the benefit of having their pleadings liberally construed. But that does not alleviate their burden to show jurisdiction. *See Beltran v. Shinseki*, 447 F. App'x 208, 209 (Fed. Cir. 2011).

The Claims Court's jurisdiction, if any, over Mr. Straw's case arises under the Tucker Act. 28 U.S.C. § 1491(a). The Tucker Act gives the Claims Court "jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." *Id.* The Tucker Act is "a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages . . . ." *United States v. Testan*, 424 U.S. 392, 398 (1976). Thus, "a plaintiff must identify a separate source of substantive law that creates the right to money damages." *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc).

For the Claims Court to have jurisdiction over takings claims, such as those asserted by Mr. Straw in case number 20-1157, the plaintiff must allege that the challenged government actions were not *ultra vires*. Government officials acting *ultra vires* cannot effect takings for public purposes within the meaning of the Fifth Amendment. "A compensable taking arises only if the government action in question is authorized." *Del-Rio Drilling Programs v. United States*, 146 F.3d 1358, 1362 (Fed. Cir. 1998). Unauthorized takings may be enjoinable, but they are not entitled to compensation under the Fifth Amendment. *Id.*

Mr. Straw argues that the Claims Court committed both factual and legal errors that warrant reversal. First, he alleges that the Claims Court erred as a matter of law by dismissing his case for his failure to concede the validity of the federal governmental actions which he alleges constitute takings. 21-1600 Appellant's Inf. Br. at 2. Mr. Straw states that he has "the right to object to what happened while still conceding that these entities have the power to do what they did." *Id.* He further states that, "[w]hen the government wrongfully uses its power, the use of the power is valid even if done for a bad reason." *Id.* Second, he alleges that the Claims Court made a factual error when it stated, "Straw alleges that, in dismissing two of his many pending lawsuits, the Second Circuit Clerk made false statements or misrepresented the nature of the dismissal." 21-1600 App. 26. Mr. Straw argues that the Claims Court's statement that he had "many pending lawsuits" is erroneous because he only had two cases pending before the Second Circuit and "2 is not many." 21-1600 Appellant's Inf. Br. at 1.

Mr. Straw did not allege in his complaint facts essential to show that the Claims Court had jurisdiction over his claims. *See McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936) (A plaintiff "must allege in his pleading the facts essential to show jurisdiction."). In his complaint Mr. Straw alleges facts which, accepted as true for the purposes of deciding the Government's motion to dismiss, fail to provide any basis to find that the various government actors acted with the authority of the government. For example, he alleges that the Fourth Circuit Clerk acted "outside the normal policies and procedures of that Court," 21-1600 App. 1 ¶ 3; that the Fourth Circuit Clerk "packed [his] appeals with hostile judges" in violation of a policy "that panels are supposed to be assigned randomly as to avoid improper bias and unfair results," 21-1600 App. 16 ¶¶ 14–17; that the Second Circuit Clerk dismissed his appeals before that court "for a reason that was false," 21-

1600 App. 15 ¶ 6; that the Supreme Court Clerk refused to file a document based on incorrect legal arguments, 21-1600 App. 17 ¶ 24; and that the SBA "repeatedly . . . asked for the same documents" which Mr. Straw avers he had already filed, 21-1600 App. 18 ¶ 27. An action may be illegal or against stated policy and still be an authorized action which can effect a taking. *Del-Rio*, 146 F.3d at 1362. But here, Mr. Straw has alleged no facts to show that the alleged conduct was authorized at all. And his assertions that the complained-of conduct was against stated government policy, without more, naturally lead to the opposite conclusion—that the conduct was not authorized.

In Mr. Straw's complaint to the Claims Court, he appears to conclude that the various government actors had authority to dismiss his myriad claims and deny his loan application, but with the caveat that he does so only for this case and "should be able to interpret these actions differently elsewhere as it suits" him. 21-1600 App. 3. He states: "I fully accept for the purposes of my case here that the clerks and the ABA [sic] had the power to do what they did, but that does not excuse the takings without compensating them." 21-1600 App. 3. The Claims Court is required to take all undisputed facts alleged in the complaint as true but need not take as true a "legal conclusion couched as a factual allegation," such as Mr. Straw's half-hearted conclusion here. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986).

Even if we were to disagree with the Claims Court's stated reason for dismissing Mr. Straw's appeals, there are other grounds for dismissal. Mr. Straw's claims based on the actions of other circuit courts and the Supreme Court effectively ask the Claims Court to review the acts of other Article III courts, a task for which the Claims Court does not have jurisdiction. *See Straw*, 2021 WL 2944400, at *1–2. Nor could the Claims Court review the actions of the SBA where Mr. Straw has not exhausted his administrative remedies. *See JCM, Ltd. v. United States*, 210 F.3d

1357, 1359 (Fed. Cir. 2000). Further, Mr. Straw does not have a vested property right in the outcome of his claims before any of the federal courts about which he complains or in the grant of a PPP loan from the SBA for which compensation might be owed under the Fifth Amendment. *See Landgraf v. USI Film Prods.*, 511 U.S. 244, 266 (1994) ("The Fifth Amendment's Takings Clause prevents the Legislature (and other government actors) from depriving private persons of vested property rights except for a 'public use' and upon payment of 'just compensation.'").

Mr. Straw's alleged factual error, that the Claims Court erroneously stated that he had "many pending lawsuits" when he avers that he only had two cases pending before the Second Circuit, is immaterial to the Claims Court decision on appeal here. The Claims Court found that it lacked subject matter jurisdiction because Mr. Straw failed to concede the validity of the government actions that were the basis of his alleged takings claims, not because of the number of Mr. Straw's pending cases. 21-1600 App. at 2.

Thus, we conclude that the Claims Court did not err in dismissing Mr. Straw's case number 20-1157. We address Mr. Straw's requests that this court rescind the Anti-Filing Order and remove the Claims Court judge below.

### III.    APPEAL NUMBER 21-1602

#### A.  Background

In appeal number 21-1602, Mr. Straw appeals the decision of the Claims Court in *Straw v. United States*, No. 21-745 (Fed. Cl. Jan. 22, 2021) denying his motion to proceed *in forma pauperis* and requiring him to pay a $402 filing fee. In this case, Mr. Straw seeks compensation of $12,000,000 for an alleged Fifth Amendment taking stemming from the Supreme Court's denial of twelve of his petitions for certiorari between January 2015 and June 2018. The Claims Court denied Mr. Straw's motion to proceed *in*

*forma pauperis* for the same reasons outlined in the Anti-Filing Order that the Court entered in case number 20-1157, which is the subject of appeal number 21-1600.

Denial "of a motion to proceed in forma pauperis is an appealable order." *Roberts v. U.S. Dist. Ct.*, 339 U.S. 844, 845 (1950) (citing *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541 (1949)). Thus, this court has jurisdiction under 28 U.S.C. § 1295(a)(3) to review the Claims Court's denial of permission to proceed *in forma pauperis*.

"Denials of *in forma pauperis* status are reviewed for abuse of discretion." *Fourstar v. United States*, 950 F.3d 856, 858 (Fed. Cir. 2020). Section 1915(a) of Title 28 of the United States Code permits, but does not require, federal courts to allow indigent parties to proceed *in forma pauperis* without prepaying fees or paying certain expenses. 28 U.S.C. § 1915; *see also Coleman v. Tollefson*, 575 U.S. 532, 534 (2015); *Chamberlain v. United States*, 655 F. App'x 822, 825 (Fed. Cir. 2016).

Similarly, we review a court's decision to impose an anti-filing order for abuse of discretion. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991) (recognizing that courts' "inherent powers must be exercised with restraint and discretion" and that "[a] primary aspect of that discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process"); *Hemphill v. Kimberly-Clark Corp.*, 374 F. App'x 41, 44 (Fed. Cir. 2010) ("A court's decision to impose an anti-filing injunction is also reviewed for abuse of discretion.").

## B. Discussion

In this appeal, Mr. Straw appears to argue for the reversal of the Claims Court's denial of his motion to proceed *in forma pauperis*. He also repeats his requests from appeal number 21-1600 and other appeals before this court to rescind the Anti-Filing Order and to remove the Claims Court judge. *See Straw*, 2021 WL 2944400, at *3–4.

STRAW v. US

#### 1. Denial of Motion to Proceed *In Forma Pauperis*

Mr. Straw argues that the Claims Court erred because it granted his motions to proceed *in forma pauperis* in four prior cases but denied his motion in this case despite there being no change in his financial status. He argues that the Claims Court was required to find his case frivolous before denying his motion, something which the Claims Court did not expressly do.[3]

The Claims Court did not abuse its discretion in denying Mr. Straw's motion to proceed *in forma pauperis*. Courts have discretion to limit a party's permission to proceed *in forma pauperis* where they have exhibited a history of frivolous or abusive filings. *See, e.g.*, *Martin v. D.C. Ct. of Appeals*, 506 U.S. 1, 3 (1992) (denying a petitioner's request to proceed *in forma pauperis* due to voluminous and abusive filing history); *In re Sindram*, 498 U.S. 177, 180 (1991) ("[T]he Court has a duty to deny *in forma pauperis* status to those individuals who have abused the system."); *In re McDonald*, 489 U.S. 180, 183–85 (1989) (denying petitioner's motion to proceed *in forma pauperis* and limiting petitioner's ability to proceed *in forma pauperis* in future petitions for extraordinary writs based on petitioner's abuse of judicial resources). A motion to proceed *in forma pauperis* should not be denied lightly. Denying an indigent party's motion to proceed *in forma pauperis* may effectively cut off their access to the court. But, here, the Claims Court did not abuse its discretion.

Multiple courts, including this one, have found Mr. Straw's cases frivolous. *See Straw*, 2021 WL 2944400,

---

[3]    The Claims Court expressly found that Mr. Straw's "litigation history of filing frivolous, repetitive, and vexatious actions weigh heavily against granting" his motion to proceed *in forma pauperis* but never expressly identified the instant case as frivolous. 21-1602 App. at 21.

at *1.  The Claims Court found that Mr. Straw has filed at least forty federal cases in the four years preceding its institution of the Anti-Filing Order in January 2021. 21-1602 App. 1.  Included in those forty are four cases that Mr. Straw filed in the Claims Court over the course of two weeks in August and September of 2020.  After granting the government's motions to dismiss in each of those four cases, the Claims Court instituted an Anti-Filing Order in case number 20-1157, one of the cases on appeal here.  In that Order, the Claims Court found that Mr. Straw "has repeatedly raised similar, frivolous claims in this Court and other federal courts," and that "each case reviewed has been dismissed for lack of jurisdiction or as frivolous." 21-1602 App. 1.  This court has similarly found that Mr. Straw has filed "a large number of meritless filings . . . in the Claims Court and other courts during the past several years." *Straw*, 2021 WL 2944400, at *4.  The Claims Court did not abuse its discretion to deny Mr. Straw's motion to proceed *in forma pauperis* considering his history of frivolous filing.

Mr. Straw argues that his motion to proceed *in forma pauperis* should have been granted due to his economic status.  But a court is not constrained to only consideration of economic status in determining whether to grant a motion to proceed *in forma pauperis*.  Section 1915 permits, but does not require, a court to allow a party to proceed without paying the requisite fees if "the person is unable to pay such fees or give security therefor."  28 U.S.C. § 1915(a)(1); *see also* C*hamberlain*, 655 F. App'x at 825.

Mr. Straw also argues that the Claims Court must find the instant case frivolous, rather than rely on a history of frivolous filings, before it may deny a motion to proceed *in forma pauperis*.  This is incorrect.  The Claims Court is free to consider a history of frivolous filing in determining whether to grant a motion to proceed *in forma pauperis*. *See, e.g.*, *Martin*, 506 U.S. at 3 (denying motion to proceed *in forma pauperis* based on history of frivolous filing).

Even if the Claims Court were required to consider the frivolity of the complaint in this case, it could easily find the complaint frivolous on its face.  Mr. Straw seeks $12,000,000 in compensation for the Supreme Court's denial of twelve petitions for certiorari.  As previously noted, the Claims Court has no jurisdiction to review decisions of the Supreme Court and, thus, no power to grant Mr. Straw the remedy he seeks.

## 2.  Anti-Filing Order

This court has previously abstained from deciding whether the imposition of the Anti-Filing Order was an abuse of discretion because the Order did not prevent filing of the case that was the subject of that prior appeal.  *Straw*, 2021 WL 2944400, at *4.  Although the Anti-Filing Order similarly did not prevent filing of either of the cases on appeal, the Claims Court entered the order as part of case number 20-1157, which is on appeal here in appeal number 21-1600.  The Claims Court also incorporated its reasoning in the Anti-Filing Order as the basis of the denial of Mr. Straw's motion to proceed *in forma pauperis* in case number 21-745, also on appeal here in appeal number 21-1602.  Thus, we address the imposition of the Anti-Filing Order on the merits here.

We find no abuse of discretion in the Claims Court's imposition of the Anti-Filing Order on the record before us for the same reasons discussed above with respect to the Claims Court's denial of Mr. Straw's motion to proceed *in forma pauperis*.  Mr. Straw does not explain why the Anti-Filing Order is contrary to law, beyond baldly asserting that it is "contrary to law and the precedents of this Court." 21-1600 Appellant's Inf. Br. at 3.  Thus, Mr. Straw has provided no reason for this court to rescind the Anti-Filing Order.

### 3.  Removal of the Presiding Claims Court Judge

In both of his appeals, Mr. Straw requests that this court remove the Claims Court judge who adjudicated his cases, alleging political bias.  As this court found with respect to another of Mr. Straw's appeals raising the same allegations against the same Claims Court judge, this claim has no merit.  *Straw*, 2021 WL 2944400, at *3.  The identity of the President who appointed a judge has no bearing on whether a judge should recuse themselves.  *Id.* Mr. Straw's allegations against the Claims Court judge are unwarranted and personal.  *See id.* at *1.  We note, moreover, that, since we are affirming the Claims Court's dismissal in case number 20-1157, and not remanding anything to that court, there are no further matters to be addressed in that case.  In the absence of Mr. Straw's payment of the required filing fee in case number 21-745, there may well be no further activities in that case as well.

## IV.    CONCLUSION

For the reasons above, we affirm the Claims Court's dismissal of case number 20-1157 for lack of jurisdiction. We affirm the Claims Court's denial of Mr. Straw's request to proceed *in forma pauperis* in case number 21-745 and remand that matter to the Claims Court for further proceedings.  For the same reasons, we affirm the Claims Court's imposition of an Anti-Filing Order in case number 20-1157.  We reject Mr. Straw's request to remove the Claims Court judge that adjudicated these two cases.

### AFFIRMED

#### COSTS

No costs.